# No. 24-5212; 24-5751

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ZUNUM AERO, INC.,

*Plaintiff, Counter-Defendant, and Appellant,*

vs.

THE BOEING COMPANY; BOEING HORIZONX VENTURES, LLC,

*Defendants, Counter-Claimants, and Appellees.*

On Appeal from the United States District Court
for the Western District of Washington
No. 21-cv-00896 (Hon. James L. Robart)

## BRIEF FOR THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS AMICUS CURIAE IN SUPPORT OF PETITION FOR REHEARING

Maria C. Monaghan
Audrey Dos Santos
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

MARK A. PERRY
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511

ANDREW H. GREINETZ
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave.
Miami, FL 33131
*(305) 577-3118*

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, the Chamber of Commerce of the United States of America ("Chamber") certifies that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICUS CURIAE ................................................................. 1

SUMMARY OF THE ARGUMENT ............................................................ 3

ARGUMENT .................................................................................................. 6

    I.    The Particularity Requirement Continues to Confuse Courts in Trade Secrets Cases. ...................................................................... 7

    II.    Both the Business Community and the Judiciary Would Benefit from More Clarity on Particularity. ..................................................... 11

    III.    The Panel in This Case Missed an Opportunity to Bring Clarity to the Law. ............................................................................................ 14

CONCLUSION ............................................................................................. 15

CERTIFICATE OF SERVICE .................................................................... 16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Carey v. Musladin*,
   549 U.S. 70 (2006) ................................................................. 13

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*,
   53 F.4th 368 (6th Cir. 2022)................................................... 10

*City of Chicago v. Alexander*,
   89 N.E.3d 707 (Ill 2017) ......................................................... 8

*Double Eagle Alloys, Inc. v. Hooper*,
   134 F.4th 1078 (10th Cir. 2025)............................................. 10

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ................................................................. 11

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) ............................................. 9, 10

*IMAX Corp. v. Cinema Techs. Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ................................................. 9

*InteliClear LLC v. ETC Glob. Holdings Inc.*,
   978 F.3d 653 (9th Cir. 2020) ................................................. 10

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974) ............................................................. 6, 7

*Kondash v. Kia Motors Am., Inc.*,
   767 F. App'x 635 (6th Cir. 2019) ............................................ 7

*Loumar, Inc. v. Smith*,
   698 F.2d 759 (5th Cir. 1983) ................................................. 13

*Oakwood Lab'ys v. Thanoo*,
   999 F.3d 892 (3d Cir. 2021)................................................ 9, 10

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
   149 F.4th 1081 (9th Cir. 2025).......................................... 9, 11, 12

*Rhode Island v. Trump*,
   No. 25-1477, 2025 WL 2621593 (1st Cir. Sept. 11, 2025) ...................................... 13

iv

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*,
    68 F.4th 792 (2d Cir. 2023) ............................................................. 7, 10

*Zunum Aero, Inc. v. The Boeing Co.*,
    No. C21-0896JLR, 2024 WL 3822780 (W.D. Wash. Aug. 14, 2024) ...................... 8

**Statutes**

Defending Trade Secrets Act, Pub. L. No. 114-153, 130 Stat. 376 (2016) .............. 7, 8

Uniform Trade Secrets Act ..................................................................... 7

**Other Authorities**

Scott Dodson, *The Complexity of Jurisdictional Clarity*, 97 Va. L. Rev.
    1, 8 (2011) ................................................................................. 13

*Lex Machina Data on Trade Secrets Cases in Federal Court*, Lexis ...................... 7, 8

*Trade Secret Litigation Report*, LexisNexis (Sep. 12, 2024),
    https://www.lexisnexis.com/community/pressroom/b/news/posts/lex-
    machina-releases-2024-trade-secret-litigation-report ............................ 10

## INTEREST OF AMICUS CURIAE[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases that raise issues of concern to the nation's business community.

The Chamber believes that clear and predictable legal rules benefit both businesses and courts. Businesses find it easier to make decisions about the future when those decisions are governed by a predictable legal landscape. Further, when parties can predict the merit of potential legal claims, they can focus their attention on meritorious lawsuits, reducing

---

[1] All parties have consented to the filing of this brief. No counsel for any party authored this brief in whole or in part and no entity or person, aside from amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

strain on courts and litigants alike. Clear rules also facilitate settlement and speedy resolution of dispositive motions for similar reasons. Lastly, clarity from appellate courts provides lower courts with guidance on how to resolve cases efficiently and accurately, aiding the judicial system and the rule of law.

To that end, the Chamber has regularly participated as amicus curiae advocating clear and predictable legal rules. *See, e.g.*, *Brief of the United States Chamber of Commerce as Amicus Curiae Supporting Neither Party, EPA v. Calumet Shreveport Refining, LLC,* Docket No. 23-1229 (2024); *Brief for the Chamber of Commerce of the United States of America and the American Fuel & Petrochemical Manufacturers as Amici Curiae In Support of Plaintiff-Appellant and Reversal, Liberty Global, Inc. v. United States of America*, No. 23-1410 (10th Cir. 2024); *Brief of the United States Chamber of Commerce as Amicus Curiae Supporting Respondents, Beavan v. Allergan USA, Inc.,* Docket No. 090150 (N.J. 2025).

The Chamber takes no position on the underlying trade secrets issues in this case, or indeed on the correct resolution of the underlying dispute. Trade secrets cases are of immense importance to many of the

Chamber's members, who may find themselves on both sides of the "v." in such litigation.

The petition for rehearing, however, raises an important and recurring issue in trade secrets litigation that is of concern to all of the Chamber's members—the level of particularity with which the claimant must identify the trade secrets at issue. Plaintiffs and defendants alike share a common interest in clear rules governing the particularity requirement. Further, the need for clarity on this important issue is likely to grow given the rising number of trade secrets cases filed in federal courts.

## SUMMARY OF THE ARGUMENT

Trade secrets cases are becoming increasingly common in federal courts. Over the last few years, federal courts have resolved thousands of trade secrets cases, with damages totaling billions of dollars. This case demonstrates how important trade secret litigation can be to businesses. Zunum Aero, the plaintiff, claimed that Boeing's actions, including Boeing's alleged misappropriation of Zunum's trade secrets, led to Zunum going out of business. Boeing, in turn, faced potentially over $150 million in damages and a jury held it liable for over $70 million. As the

facts of this case exemplify, trade secrets litigation often goes to the very heart of a business's competitive advantage.

Despite the large number of trade secrets cases and their importance to the business community, confusion on how to resolve them is rampant among district courts. In trade secrets cases, almost *half* of district court decisions on the merits are reversed. The required level of particularity with which claimants must identify trade secrets has proven to be an especially confusing, yet recurring, issue in trade secrets litigation. The claimant must walk a tightrope between adequately describing its trade secrets and not revealing so much as to give away those very secrets. And the defendant, in turn, must know the trade secret it is alleged to have misappropriated so that it can mount a defense. The particularity requirement is a difficult issue for courts to deal with, and one meriting careful appellate treatment. In this case, however, the district court issued a detailed claim-by-claim opinion on particularity, yet the panel reversed with one paragraph.

The panel's swift treatment of this significant and complex issue threatens to create confusion for parties, district courts, and the business community. Businesses in a predictable legal landscape can more easily

plan, making investments and decisions knowing how the law will govern their actions. A lack of clarity in the law not only makes it difficult to chart a value-enhancing course but overwhelms the courts with litigation as parties—no matter the merits of their position—exploit competing interpretations. And litigation, once it begins, is not easily or efficiently resolved when the dispute is not governed by clear and predictable legal rules. Like businesses, the judicial system suffers from a lack of clarity in the law. Without workable and clear legal standards, lower courts are often left guessing at how they should apply the law and decide cases, leading to more work for both district and appellate courts.

Respectfully, the panel in this case missed an opportunity to bring clarity to the particularity requirement in trade secrets cases. The district court presided over a full trial at which multiple experts testified, over several days, on Zunum's nineteen alleged trade secrets. The district court held that this evidence was not sufficiently particular, overturning the jury's verdict in a detailed opinion that examined each of the eleven trade secrets that the jury found Boeing misappropriated. The panel disagreed, but its analysis of the particularity requirement was confined to a single cursory paragraph.

Rehearing is warranted because this appeal provides an ideal vehicle for the Court to apply clear rules surrounding particularity. Unlike many cases, which may be appealed in a preliminary posture, this case has the benefit of full pre-trial briefing and discovery, a multi-day jury trial, post-trial briefing, and district court opinions at each of those stages. This fulsome record would allow the Court to fully flesh out the contours of particularity, without any fear that it would be doing so without a full set of facts. For those reasons, the court should grant either rehearing or rehearing en banc to issue a full, clear articulation of the law governing particularity in trade secrets cases.

## ARGUMENT

The panel reversed the district court's detailed decision on particularity in one paragraph. As the petition for rehearing explains, this undermines the clarity that businesses need on this important issue. The Chamber respectfully submits that this case presents an ideal vehicle to articulate and apply a workable standard for particularity in trade secrets cases going forward. That would benefit all litigants in such cases, as well as the district courts that must preside over them.

I.     **The Particularity Requirement Continues to Confuse Courts in Trade Secrets Cases.**

For most of the country's history, trade secrets litigation was governed entirely by state law. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 473–74 (1974). Federal courts only considered trade secrets issues when sitting in diversity. *See id.* at 473. But in 2016 Congress enacted the Defending Trade Secrets Act ("DTSA"), creating a private right of action in federal court for misappropriation of trade secrets. *See* Defending Trade Secrets Act, Pub. L. No. 114-153, 130 Stat. 376 (2016); *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 808 (2d Cir. 2023).

Since the DTSA came into effect, federal courts have seen a dramatic rise in the number of trade secrets cases on their dockets, with nearly 20% more cases being filed in federal court on average. *Lex Machina Data on Trade Secrets Cases in Federal Court*, Lexis (accessed Oct. 1, 2025). This year projects to break records, with nearly 1,500 estimated trade secrets cases being filed in federal court. *Id.* This represents not just a new record, but a staggering 33% increase from the number of such cases filed in 2022. *Id.*

7

Federal courts decide cases under the DTSA as well as state law. And the DTSA, while federal, resembles the Uniform Trade Secrets Act, *Syntel*, 68 F.4th at 808, which nearly every state has adopted. *See Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 647 (6th Cir. 2019) (Griffin, J., dissenting). Decisions by federal courts, therefore, may shape state-court interpretations of state law, as state courts frequently follow federal precedent even when they are not required to do so. *See, e.g., City of Chicago v. Alexander*, 89 N.E.3d 707, 713 (Ill 2017). Accordingly, decisions under one state's law (here, Washington's) affect cases brought under the DTSA and other similar state laws.

Trade secrets cases are of immense importance to the businesses involved in them, and the economy at large. The financial interests in this litigation are significant. Since 2016, federal courts have awarded over $4 billion in damages, not including the awards in any cases still pending. *Lex Machina Data on Trade Secrets Cases in Federal Court*. But the business interest in the outcome of trade secrets cases is more than financial. As the district court put it, a trade secret is often a company's "secret sauce." *Zunum Aero, Inc. v. The Boeing Co.,* No. C21-0896JLR, 2024 WL 3822780, at *3 (W.D. Wash. Aug. 14, 2024) ("*District Court*

*Op.*"). Because trade secrets are protected indefinitely, unlike patents or copyrights, a company's trade secrets are often the very thing that keeps it afloat as an entity. As a result, trade secrets plaintiffs often seek millions—if not billions—in liability and expose defendants to extensive litigation, creating business uncertainty and roadblocks to investment and innovation. And the decisions in trade secrets cases—particularly from this and other appellate courts—have consequences far beyond the individual litigants, motivating and shaping future litigation.

A recurring issue in trade secrets litigation is the requirement of "particularity." Because "trade secrets derive their value from nondisclosure," litigants face a "delicate problem"— how to "prove whether a trade secret has been misappropriated without giving away the trade secret." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.,* 149 F.4th 1081, 1085 (9th Cir. 2025). Parties must show, using concrete facts, the purported secret is not generally known or readily ascertainable by others. *Oakwood Lab'ys v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). And they must do so while simultaneously not revealing so much information as to "tip off a business rival to where the real secrets lie." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002). This balancing act,

combined with the fact that trade secrets often rely on highly technical information, means courts have trouble determining what is and is not a trade secret. *See IMAX Corp. v. Cinema Techs. Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998). This is one of the many reasons that, by one estimate, almost *half* of trade secrets decisions from district courts are overturned on appeal. *See Lex Machina Releases 2024 Trade Secret Litigation Report*, LEXISNEXIS                    (Sep.                    12,                    2024), https://www.lexisnexis.com/community/pressroom/b/news/posts/lex-machina-releases-2024-trade-secret-litigation-report.

Courts often use broad language in dealing with the particularity problems raised in trade secrets cases. This circuit has described the standard as requiring plaintiffs to show a "tangible trade secret" with "sufficient particularity." *InteliClear LLC v. ETC Glob. Holdings Inc.*, 978 F.3d 653, 658 (9th Cir. 2020). This or a similar standard has been adopted by other circuits. *See Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1089 (10th Cir. 2025); *IDX Sys.*, 285 F.3d at 583–84; *Oakwood Lab'ys*, 999 F.3d at 906–07; *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 381 (6th Cir. 2022) (using a "reasonable

particularity" standard); *Syntel*, 68 F.4th at 800. Applying that standard in practice, however, can be challenging.

District courts would benefit from more—not less—analysis from appellate courts assessing particularity. In the span of two days, this Court reversed two district court opinions on particularity—in this case and *Quintara Biosciences*. The opinion in the latter case opened by asking, "[h]ow can plaintiffs plead, discover, and prove whether a trade secret [exists] . . . without giving away the trade secret?" *Quintara Biosciences*, 149 F.4th at 1085. The Court identified the problem but stopped short of giving an answer. Similarly in this case, the panel merely noted that some evidence was presented at trial and then concluded that evidence "provided sufficient specificity." *Panel Op.* at 3. These opinions fail to provide litigants or lower courts with concrete guidance on how to handle particularity in trade secrets cases.

## II.    Both the Business Community and the Judiciary Would Benefit from More Clarity on Particularity.

Business litigants in trade secrets cases rely on clear, predictable legal rules in their everyday operations. Clarity "is valuable to corporations making business and investment decisions." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). In the context of a rule such as

11

particularity, clarity in what litigation entails helps businesses better assess the tradeoffs of future actions, regardless of whether they find themselves to be plaintiffs or defendants. In contrast, uncertainty may impede businesses from accurately assessing risks and alternatives. As just one example, businesses face a variety of tradeoffs in keeping proprietary information as a trade secret instead of invoking other intellectual property protections, most of which (such as a patent) require public disclosure. But businesses cannot assess those tradeoffs if they do not know what is required or permitted to enforce the trade secret against misappropriation.

A lack of clarity also encourages more, and more complex, litigation. Obviously, parties generally only initiate litigation if they believe they have some chance of success. When the law is unclear, a greater range of litigants will see a chance of success. This leads to more litigation and fewer settlements, imposing real costs on businesses and district courts. If litigation does commence, uncertainty makes cases difficult to resolve before trial and leads to large numbers of motions as both sides seek to exploit the law's uncertainties. Issues of uncertainty are accentuated in trade secrets cases. Plaintiffs must decide how much of their trade secrets

to reveal, aiming to reveal enough without divulging the secret itself. *See Quintara Biosciences*, 149 F.4th at 1091. But if plaintiffs do not know how much they need to say, they will incur significant expense trying to guess where this "goldilocks" zone may lie, and defendants likewise will spend critical resources trying to develop a successful opposing strategy. Clarity in the law solves many of these problems, "generally reduc[ing] litigant costs" in and out of the courtroom. Scott Dodson, *The Complexity of Jurisdictional Clarity*, 97 VA. L. REV. 1, 8 (2011).

The judicial system also benefits from clarity. District courts try, and are bound, to faithfully apply the law of the circuit, but a lack of clarity creates difficulty by making the correct resolution of the case unclear. *See, e.g.*, *Rhode Island v. Trump*, No. 25-1477, 2025 WL 2621593, at *4 (1st Cir. Sept. 11, 2025) (attempting to grapple with what the court viewed as unclear Supreme Court precedent). This inevitably leads to more frequent incorrect applications of precedent. *See Carey v. Musladin*, 549 U.S. 70, 76 (2006) (holding that the state court's incorrect decision was not an unreasonable application of clearly established law given the "lack of guidance" from the Supreme Court). This, combined with the lack of clarity in the law, motivates appeals and in turn strains

appellate courts, which must spend time reversing erroneous district court decisions. Clear, predictable rules, then, "enhance judicial efficiency" by reducing duplicative litigation and unnecessarily drawn-out cases. *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983).

## III.   The Panel in This Case Missed an Opportunity to Bring Clarity to the Law.

Unlike some other trade secrets appeals, this case does not arrive in a preliminary posture. It comes after motions for summary judgment, an eight-day trial, and a motion for judgment as a matter of law. *See* Min. Entry, ECF No. 487 (Mar. 25, 2024); *District Court Summary Judgment Orders*, ECF Nos. 590 & 601 (Apr. 22, 2024; May 9, 2024); *District Court Op.* at 1.

This case's detailed factual record and extensive briefing make it an ideal vehicle for a fulsome analysis of particularity. The district court was able to examine each of the alleged trade secrets and the evidence presented and assess whether it was "sufficiently particular" and why. *District Court Op.* at 4–15. A similar opinion from this Court would serve as a valuable roadmap for particularity going forward, not only for the parties to this case, but for other actual and potential litigants in trade secrets cases.

The panel opinion, however, reversed the district court's particularity decision in one paragraph. The decision provided almost no analysis of the evidence presented and how it fit into any particularity standard. Instead, it simply declared the evidence sufficient and moved on. This was a missed opportunity to provide clarity on particularity, and indeed, may create confusion among parties and lower courts in future cases. The Chamber respectfully submits that a complete explanation from this Court of how the evidence of trade secrets here either meets (as the panel ruled) or doesn't meet (as the district court ruled) the particularity requirement would be of significant benefit to the bench, bar, and business community.

## **CONCLUSION**

The petition for rehearing should be granted.

Dated:      October 6, 2025      Respectfully submitted,


*/s/ Mark A. Perry*

15

Maria C. Monaghan
Audrey Dos Santos
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

MARK A. PERRY
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511

ANDREW H. GREINETZ
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave.
Miami, FL 33131
(305) 577-3118

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 6, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Mark A. Perry

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(g), I certify that:

This brief complies with Ninth Circuit Rule 29-2(c)(2)'s type-volume limitation because it contains 2,940 words (as determined by the Microsoft Word 2016 word-processing system used to prepare the brief), excluding the parts of the brief exempted by Rule 32(f).

This brief complies with Rule 32(a)(5)'s typeface requirements and Rule 32(a)(6)'s type-style requirements because it has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Century Schoolbook font.

/s/ Mark A. Perry